IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAK PRODUCTIONS, INC., et al.,

          Plaintiffs,

v.                                         CIVIL ACTION NO.   2:15-cv-00361

ROBERT BAYER,

          Defendant.


**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
MEMORANDUM OPINION AND ORDER**

     Pending before the court is the plaintiffs' motion for a preliminary injunction with respect to the parties' covenant to not compete. (Pls.' Mot. for a TRO & Prelim. Inj., Writ of Replevin, Leave to Conduct Expedited Discovery, & Produc. of Docs. & Things [Docket 5]). For the reasons explained below, the plaintiffs' request for a preliminary injunction on this issue is **DENIED**. The court **DIRECTS** the Clerk to refer any remaining discovery matters contained in plaintiffs' motion [Docket 5] to the Magistrate Judge.

**I. Findings of Fact**

     The plaintiffs JAK Productions, Inc. ("JAK") and Group Consultants, Inc. ("GCI") request that the defendant Robert Bayer be preliminarily enjoined from violating the noncompete provision in section 8.a. of his Employment Contract. *See infra* Part III (discussing scope of order). I need only make findings of fact that are pertinent to this determination. I **FIND** as follows:

1

1. JAK performs telemarketing work to fundraise for nonprofit organizations. (*See* Prelim. Inj. Hr'g Tr. ("Tr.") [Docket 22], at 92:2-7; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 2).

2. GCI performs "consultant services for nonprofit organizations." (Tr. [Docket 22], at 91:23-24; *see* Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 2).[1]

3. JAK and GCI employed Mr. Bayer beginning in February 2010. (*See* Compl. [Docket 1], at 2; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 2-3; Def.'s Proposed Findings of Fact & Conclusions of Law Re: Request for Prelim. Inj. Sought by Pls., JAK & GCI ("Def.'s Proposed Findings of Fact & Conclusions of Law") [Docket 31], at 3-4).

4. Mr. Bayer entered into an Employment Contract with JAK and GCI dated February 24, 2010. (*See* Ex. 1 Employment Contract [Docket 1-1], at 1).

5. The Employment Contract included restrictive covenants, including a noncompetition provision located in section 8.a. (*See id.* at 3). That provision provides as follows:

> 8.  Restrictive Covenant
>
>     a.  Geographic Limitation. To the fullest extent permitted by applicable law, for a period of eighteen (18) months after the termination of employment with EMPLOYER (for any reason, including resignation), Employee, on behalf of any entity in competition with EMPLOYER (whether as a proprietor, partner, joint venturer, stockholder, director, officer, trustee, principal, agent, servant, employee, consultant, or in any other

---

[1] At the preliminary injunction hearing, I stated that "so far, I haven't heard anything that makes me believe there's grounds for an injunction for GCI, but maybe there will be." (Tr. [Docket 22], at 115:4-6). Upon full consideration of the materials presently before the court, I still do not find "grounds for an injunction for GCI." (*Id.*). Instead, I question whether GCI is a proper party in this lawsuit. John Keller is the president of both JAK and GCI. (*Id.* at 91:20-92:1). GCI does not "send a paycheck to anyone other than" Mr. Keller. (Tr. [Docket 114:13-15). Mr. Bayer states that he did consulting work for GCI. (*Id.* at 11:25-12:1). Also, both JAK and GCI are parties to Mr. Bayer's Employment Contract. (*Id.* at 21:3-6). However, the evidence largely suggests that JAK was, in reality, Mr. Bayer's day-to-day employer. Although I need not address this issue for purposes of this opinion, I would entertain motions concerning this matter should the parties decide to file them.

> capacity, hereafter referred to as "in any capacity"), may not, directly or indirectly, engage in any fund-raising or telemarketing business within a thirty (30)-mile radius of any call center of EMPLOYER for which Employee, directly or indirectly, is responsible or involved with, during the two (2) years prior to the termination of Employee's employment with EMPLOYER. Employee understands and agrees that the term "any entity in competition with EMPLOYER" includes any business that engages in fund-raising on behalf of public safety or other civic associations, including but not limited to police and firefighter associations, and/or any business that engages in providing similar inbound and outbound telemarketing services to like clients.

(*Id.*).

6. While employed, Mr. Bayer did work for JAK's call centers in Parkersburg, West Virginia; Fairmont, West Virginia; Portsmouth, Ohio; and Washington, Pennsylvania. (*See* Tr. [Docket 22], at 18:16-19:10, 19:20-20:7, 92:4-7). The Washington, Pennsylvania, call center is now closed. (*See id.* at 18:20-22, 92:6-7).

7. In 2014, Mr. Bayer resigned from his employment with JAK and GCI. (*See* Def.'s Proposed Findings of Fact & Conclusions of Law [Docket 31], at 9). His last day of employment was March 27, 2014. (*See* Tr. [Docket 22], at 22:14-16; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 3).

8. Mr. Bayer commenced employment with Residential Programs, Inc. ("RPI") in April 2014. (*See* Tr. [Docket 22], at 9:18-21, 10:2-4).

9. RPI and JAK are direct competitors. (*See id.* at 16:18-19; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 9).

10. Mr. Bayer performed work from his home for RPI from April 2014 until he began working in RPI's new call center in Athens, Ohio, on October 20, 2014. (*See* Tr. [Docket 22], at 14:7-18; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 10).

11. Mr. Bayer's home is within a 30-mile radius of JAK's Parkersburg, West Virginia, call centers. (*See* Tr. [Docket 22], at 44:21-25; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 10).

12. RPI's call center in Athens, Ohio, is within a 30-mile radius of at least one of JAK's Parkersburg, West Virginia, call centers. (*See* Tr. [Docket 22], at 45:1-18; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 10; Def.'s Proposed Findings of Fact & Conclusions of Law [Docket 31], at 10).

13. While working from home, Mr. Bayer assisted RPI in opening its Athens, Ohio, call center. (*See* Tr. [Docket 22], at 14:22-15:5; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 9).

14. While working at RPI's Athens, Ohio, call center, Mr. Bayer performs similar operations work as he did at JAK's call centers. (*See* Tr. [Docket 22], at 23:5-8; Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 10).

## II. Procedural History

The plaintiffs filed their complaint on January 8, 2015 [Docket 1]. They bring actions against Mr. Bayer for breach of contract, conversion, misappropriation of trade secrets, and breach of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g). The plaintiffs also filed a motion for a temporary restraining order and preliminary injunction, writ of replevin, leave to conduct

expedited discovery, and production of documents and things [Docket 5] and filed a memorandum in support [Docket 6].

I set a TRO hearing on this motion for January 9, 2015. (*See* Pls.' Notice of Hr'g [Docket 12], at 1). However, the hearing was cancelled upon the request of the parties. Instead, the parties stipulated to the following: (1) Mr. Bayer "is temporarily restrained . . . from violating the non-compete (i.e., paragraph 8.a.'s 30-mile radius restriction) obligations as set forth in his Employment Contract until further order of this Court;" (2) Mr. Bayer "is preliminary enjoined from violating his anti-piracy, non-solicit, and confidentiality obligations as set forth in his Employment Contract . . . throughout the pendency of this litigation or until further order of the Court;" (3) Mr. Bayer is preliminary enjoined from using or destroying any of the plaintiffs' data; (4) Mr. Bayer is preliminarily enjoined from using or disclosing the plaintiffs' confidential information or trade secrets; (5) Mr. Bayer must return all of plaintiffs' property; and (6) Mr. Bayer must make available to the plaintiffs any electronic storage devices he has used since March 1, 2014. (Stipulated Order Granting Pls.' Mot. for a TRO & Prelim. Inj., in Part, Writ of Replevin and Setting Prelim. Inj. Hr'g ("Stipulated Order") [Docket 16], at 3). The stipulated order also set a preliminary injunction hearing for January 26, 2015.

The day of the hearing, the plaintiffs filed a supplemental memorandum of law in support of their motion [Docket 18], and, at the conclusion of the preliminary injunction hearing, I gave the parties 14 days to submit recommended findings of fact. (*See* Tr. [Docket 22], at 142:12-143:6). On February 9, 2015, both parties filed their proposed findings of fact and conclusions of law [Docket Nos. 30 & 31]. On February 9th, the plaintiffs additionally filed a post preliminary injunction hearing brief [Docket 28].

At the time of the preliminary injunction hearing on January 26, 2015, no motion response had been filed by Mr. Bayer. However, just before the hearing, Mr. Patrick McFarland, as counsel for Mr. Bayer, hand-delivered the defendant's response to chambers on the understanding that it would be filed soon thereafter. Nevertheless, no such response was filed until February 12, 2015 [Docket 36], when the court granted Mr. McFarland's motion to withdraw as counsel and mentioned this lack of filing in the order [Docket 35]. Because the plaintiffs had not received a copy of this response until February 12th, they moved to supplement the hearing record with additional exhibits [Docket 37]. I granted the plaintiffs' request to do so on February 27, 2015 [Docket 39].

Therefore, with respect to this particular motion, I have before me the plaintiffs' motion [Docket 5], memorandum in support [Docket 6], supplemental memorandum in support [Docket 18], post preliminary injunction hearing brief [Docket 28], recommended findings of fact and conclusions of law [Docket 30], and supplemental hearing exhibits [Docket 37]. As for the defendant, I have before me his response [Docket 36] and his recommended findings of fact and conclusions of law [Docket 31]. In addition, I will consider the evidence presented by the parties at the preliminary injunction hearing. (*See* Tr. [Docket 22]).

### III. Scope of Order

Throughout litigation, the parties have inconsistently presented the scope of the instant matter to the court. As a result, I must first clarify the issue that is pertinent to this request for a preliminary injunction.

On the one hand, the parties explicitly state that the court need only concern itself with the noncompete provision of the Employment Contract located in section 8.a. (*E.g.*, Tr. [Docket 22],

6

at 55:15-56:3 (both parties stating that the focus is on section 8.a.); Pls.' Post Prelim. Inj. Hr'g Br. [Docket 28], at 1) (stating that "[t]he Hearing focused solely on the enforceability of Defendant Robert Bayer's . . . 18-month Non-Compete within a 30-mile radius restrictive covenant . . . found in his Employment Contract (Plaintiff's Ex.1, Para. 8.a.) with Plaintiffs . . . JAK Productions, Inc. . . . and Group Consultants, Inc. . . . and the applicability of the same to the facts at this preliminary stage of the case") (citation, footnote, and parenthetical abbreviations omitted); Def's Proposed Findings of Fact & Conclusions of Law [Docket 31], at 1 (stating the "Plaintiff brings this matter before the court seeking a preliminary injunction to try keep [sic] defendant from earning a living and supporting his family because of the 30 mile 'Geographic Limitation' set forth in ¶8a of the purported 'Employment Contract' at issue in this case."); *see* Stipulated Order [Docket 16], at 3 ¶ 7 (stating that the stipulated TRO with respect to the noncompete provision "is, by the consent of the parties, hereby extended until such time as the court has issued a ruling on the preliminary injunction regarding the [noncompete issue]."); *id.* at 2 ¶ 1 (deeming the noncomplete as "i.e., paragraph 8.a.'s 30-mile radius restriction")).

However, the complaint states that Section 8.b. and 8.c. of the Employment Contract are also "non-competition requirements." (Compl. [Docket 1], at 7; *see* Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 17 (proposing that the court enjoin Mr. Bayer "from violating his obligations under the covenants not to compete in the Employment Agreement, including those provisions in Paragraph 8 of the Agreement, including but not limited to working for RPI from his home or anywhere else within the thirty (30)-mile radius of JAK's [certain] call centers . . . ."). Moreover, at the preliminary injunction hearing and throughout their briefing, the parties presented evidence and argument concerning issues seemingly relevant to the plaintiffs'

7

other legal claims, including evidence and argument related to confidential information, trade secrets, and employee solicitation.

I limit my analysis to Section 8.a. of the Employment Contract. The defendant admits that he "has already agreed, though the pendency of this action or until further order of court to honor the 'Limitation on Use of Certain Information to Compete' provision (¶ 8b); [and] the 'Customer Limitation' provision (¶ 8c) . . . of the 'Employment Contract.'" (Def's Proposed Findings of Fact & Conclusions of Law [Docket 31], at 1). Therefore, Section 8.a. remains as the only noncompetition section currently at issue.

Also, I decline to consider the parties' evidence and argument concerning the plaintiffs' other claims at this stage in the litigation. I recognize that there may be some overlap between the evidence presented among each cause of action. For example, a court considers the employer's "protectable interest[s]" in determining whether a covenant to not compete is enforceable, and, thus, the use of employer information and resources may be relevant. *See Reddy v. Cmty. Health Found. of Man*, 298 S.E.2d 906, 916 (W. Va. 1982). However, I will not otherwise consider the arguments in the parties' briefings that are immaterial to the instant request. Per the parties' stipulation, Mr. Bayer is already "preliminarily enjoined" from violating the antipiracy, nonsolicit, and confidentiality provisions of his Employment Contract. (Stipulated Order [Docket 16], at 2 ¶ 2).[2] He is already "preliminarily enjoined" from using any of the plaintiffs' data, confidential information, and trade secrets. (*Id.* at 2 ¶ 3-4). He is already required to return all of the plaintiffs'

---

[2] For example, the plaintiffs' argue that "Bayer violated the Non-Compete Agreement both by directly soliciting twenty-seven (27) current or recently departed JAK employees, including McGee, one of JAK's managers." (Pls.' Post Prelim. Inj. Hr'g Br. [Docket 28], at 13). However, the noncompete provision in Section 8.a. of the Employment Contract says nothing about solicitation of employees. The plaintiffs contend that employee solicitation "goes to the competing component[.]" (Tr. [Docket 22], at 56:15). However, I find that such an argument lacks merit in light of other provisions in the Employment Contract at issue. The antipiracy provision in Section 8.d. addresses employee solicitation, and Mr. Bayer has already agreed to be preliminarily enjoined to abide by this provision.

property. (*See id.* at 2 ¶ 5). The parties agreed to this order. I am not to redecide whether Mr. Bayer should be preliminarily enjoined on these issues. (*See* Tr. [Docket 22], at 143:19-20 ("The current order will remain in effect by the agreement of the parties, and that is the order of the Court.")).

Thus, in this opinion, I will consider the parties' arguments only with respect to the plaintiffs' request that Mr. Bayer be preliminarily enjoined from violating the covenant to not compete in Section 8.a.

## IV. Conclusions of Law

### A. Preliminary Injunction

In order to obtain a preliminary injunction, the plaintiff must demonstrate the following: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. Fed. Election Com'n*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (internal quotation marks omitted), *vacated on other grounds*, 559 U.S. 1089 (2010). The Fourth Circuit has deemed this type of relief "an extraordinary remedy." *Id.* at 345.

#### 1. Likelihood of Success on the Merits

In terms of the first prong, "the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." *Id.* at 345-46 (quoting *Winter*, 555 U.S. at 22). The Fourth Circuit has made clear that the "requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than [its former] *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47.

9

In order to satisfy the first prong, the plaintiffs here must demonstrate that they have a likelihood of success in proving that Mr. Bayer breached the noncompete provision in his contract. The noncompete covenant provides:

> 8. <u>Restrictive Covenant</u>
>
> a. <u>Geographic Limitation</u>. To the fullest extent permitted by applicable law, for a period of eighteen (18) months after the termination of employment with EMPLOYER (for any reason, including resignation), Employee, on behalf of any entity in competition with EMPLOYER (whether as a proprietor, partner, joint venturer, stockholder, director, officer, trustee, principal, agent, servant, employee, consultant, or in any other capacity, hereafter referred to as "in any capacity"), may not, directly or indirectly, engage in any fund-raising or telemarketing business within a thirty (30)-mile radius of any call center of EMPLOYER for which Employee, directly or indirectly, is responsible or involved with, during the two (2) years prior to the termination of Employee's employment with EMPLOYER. Employee understands and agrees that the term "any entity in competition with EMPLOYER" includes any business that engages in fund-raising on behalf of public safety or other civic associations, including but not limited to police and firefighter associations, and/or any business that engages in providing similar inbound and outbound telemarketing services to like clients.

(Ex. 1 Employment Contract [Docket 1-1], at 3).[3] Given that Mr. Bayer's home and RPI's call center in Athens, Ohio, are within 30 miles of JAK's call center in Parkersburg, West Virginia, Mr. Bayer could be found in violation of the above terms. As I stated at the preliminary injunction hearing, "if the Court were to find [that the above covenant] was reasonable in time and reasonable distance and so forth, there is very substantial evidence with regard to the breach of the contract." (*See* Tr. [Docket 22], at 117:2-3). Due to the Employment Contract's choice-of-law provision, I

---

[3] The plaintiffs have set forth an argument that the "(30)-mile radius geographic restriction . . . refers to straight-line distance ('as the crow flies') rather than driving distance[.]" (Pls.' Supp. Mem. of Law in Supp. of Mot. for Prelim. Inj. [Docket 18], at 1). I agreed with this point at the preliminary injunction hearing, and I reaffirm my ruling here. (*See* Tr. [Docket 22], at 57:6-10 ("I will hold that the contract establishes a 30-mile radius and that the call center was within the 30-mile radius unless there is proof to the contrary. I recognize the argument about the driving distance and I reject it.")).

10

**FIND** that West Virginia law applies to this analysis. (Ex. 1 Employment Contract [Docket 1-1], at 11 ¶ 20).

In order to find a likelihood of success on the merits, the Employment Contract must first be valid. *Reddy*, 298 S.E.2d at 915 ("Any covenant not to compete must first, of course, pass inspection as a provision in a binding contract."). The defendant argues that there was no consideration for the contract because he signed it on his second day of employment. Although Mr. Bayer admits that he was offered a $5000 bonus on the date of signing, the plaintiffs failed to pay him within the promised time period. In addition, the defendant argues that certain ambiguities in the contract render it void and that the plaintiffs' alleged breach of the contract renders it invalid. However, on the record before me, I **FIND** that the defendant's arguments lack merit. I **FIND** that the Employment Contract is valid.

Next, the covenant to not compete must be enforceable. *See id.* "The oft-stated, in fact axiomatic, rule governing the enforcement of covenants not to compete is that such covenants are subject to the 'rule of reason . . . and [the West Virginia Supreme Court] has expressly adopted the rule of reason as the governing principle in these matters." *Id.* at 910-11 (citations omitted). In particular, "[a] restraint is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* at 911 (citation omitted).

With these principles in mind, a court engages in a "threshold analysis." *Id.* at 915. First, the court determines whether the covenant is reasonable on its face. *See id.* ("The covenant in question must be reasonable on its face if judicial scrutiny of it is to continue."). "If the covenant is unreasonable on its face, then it is utterly void and unenforceable[,]" and the court "set[s] [it]

11

aside." *Id.* at 915, 917. "If the covenant is inherently reasonable the inquiry continues." *Id.* at 917.

The West Virginia Supreme Court has stated that

> an employee covenant not to compete is unreasonable on its face if its time or area limitations are excessively broad, or where the covenant appears designed to intimidate employees rather than to protect the employer's business, and a court should hold any such covenant void and unenforceable, and not undertake even a partial enforcement of it, bearing in mind, however, that a standard of "unreasonable on its face" is to be distinguished from the standard of "reasonableness" used in inquiries adopted by other authorities to address the minor instances of overbreadth to which restrictive covenants are naturally prone.

*Huntington Eye Assocs., Inc. v. LoCascio*, 553 S.E.2d 773, 780 (W. Va. 2001) (quoting Syl. Pt. 2 of *Reddy*, 907 S.E.2d at 907-08).

Here, I **FIND** that judicial scrutiny of section 8.a. need not continue because the covenant is unreasonable on its face. *See Reddy*, 907 S.E.2d at 915 ("The covenant in question must be reasonable on its face if judicial scrutiny of it is to continue."). The West Virginia Supreme Court has previously found 30-mile geographic restrictions to be reasonable on their face. *Gant v. Hygeia Facilities Found., Inc.*, 384 S.E.2d 842, 843 (W. Va. 1989) (30-mile restriction for three years); *Reddy*, 298 S.E.2d at 909 (30-mile restriction for three years); *see Weaver v. Ritchie*, 478 S.E.2d 363, 364 (W. Va. 1996) (50-mile restriction for 15 years). However, the instant covenant's geographical restriction is not reasonable given the industry at issue. Whether Mr. Bayer makes calls while 1 mile away from JAK's office or 1000 miles away, JAK's business is affected just the same.

Near the beginning of West Virginia's jurisprudence on covenants to not compete, the West Virginia Supreme Court stated that

> a contract between the seller and purchaser of an established shop or business, which binds the seller, as incident to the sale or purchase of his property, not to set up and engage in a rival business within the neighborhood thereof or in such

12

>close proximity thereto as to detract from the natural patronage of such shop or business, is not void on grounds of public policy, as constituting an unreasonable restraint of trade.

*Weaver*, 478 S.E.2d at 369 (quoting Syl. Pt. 1 of *Boggs v. Friend*, 87 S.E. 873 (W. Va. 1916)). However, not all businesses today rely upon "the natural patronage" of a physical neighborhood.

For example, suppose that Grocery Store X employs Employee Y. If Employee Y leaves and opens up her own grocery store across the street, then Grocery Store X's business may lose customers. Employee Y's new store may "detract from the natural patronage" of Grocery Store X. *See id.* In this circumstance, a geographical limitation on Employee Y's ability to compete would protect Grocery Store X's interests. This scenario serves the traditional purpose of noncompete covenants as outlined by the *Boggs* court.

However, the instant circumstances are entirely different. JAK's business is gained by making phone calls to individuals. Whether Mr. Bayer dials Customer A while 1 mile away from JAK's office or 1000 miles away does not alter the financial impact that Mr. Bayer imposes on JAK. JAK does not rely upon "the natural patronage" of the surrounding area for customers and, as such, a geographic noncompetition limitation on its former employee is ineffective. *Weaver*, 478 S.E.2d at 369 (quoting Syl. Pt. 1 of *Boggs*).

This same logic applies to several modern businesses. For example, an online store can sell products to customers across the country, no matter the location of the store's physical office. There may be, of course, some extraneous reason as to why a certain office location is advantageous to an industry. A particular city may provide a company with easier access to resources. However, I do not find any such reason to be present for JAK.

13

JAK contends that "[t]he most effective employee recruitment area is within the thirty (30) mile radius of a call center." (Pls.' Proposed Findings of Fact & Conclusions of Law [Docket 30], at 10). However, the noncompete says nothing about employee recruitment. It prohibits Mr. Bayer from "directly or indirectly, engag[ing] in any fund-raising or telemarketing business within a thirty (30)-mile radius." (Ex. 1 Employment Contract [Docket 1-1], at 3 ¶ 8.a.). By its plain language, this provision does not concern employee recruitment activities.

Also, it is of no consequence that the parties agreed to a reasonableness clause in Employment Contract. By way of the provision, Mr. Bayer "acknowledge[d] that the restricted period of time, geographic limitation, and customer limitation specified are reasonable in view of the nature of the business in which EMPLOYER is engaged and [Mr. Bayer's] knowledge of EMPLOYER's operations." (*Id.* at 5 ¶ 8.f.). However, the section also states, "If the scope of any stated restriction is too broad to permit enforcement of such restriction to its fullest extent, then such restriction shall be enforced to the maximum extent permitted by law." (*Id.*).

The West Virginia Supreme Court has recognized that the rule of reason is a messy inquiry. *See Reddy*, 298 S.E.2d at 911 (stating that the three-pronged reasonableness inquiry for covenants to not compete "ignores the interdependent, hence foggy, nature of these three inquiries"); *id.* (noting, with respect to the reasonableness inquiry, that "[w]e know that we are in the jungle, and we now know the cardinal points, but we are more or less still knee-deep in unstructured muck") (footnote omitted); *id.* at 912 ("[I]t is important that further inquiry [into the reasonableness analysis] be pursued. This is not an inquiry that can be pursued in pure and abstract legal terms, however. One must first consider the social and economic landscape that is the natural habitat of the restrictive covenant."). It makes sense that such an analysis changes in each circumstance and

14

over time. *See id.* at 911 n.4 (quoting *Am. Jur. 2d* that "[t]here is no inflexible formula for deciding the ubiquitous question of reasonableness. Precedents are of little value . . . the question of reasonableness must be decided on an *ad hoc* basis."); *see, e.g.*, Jon P. McClanahan & Kimberly M. Burke, *Sharpening the Blunt Blue Pencil: Renewing the Reasons for Covenants Not to Compete in North Carolina*, 90 N.C. L. Rev. 1931, 1986 (2012) (noting that, for North Carolina, "[r]ecent cases make it clear that the traditional reasonableness framework is incongruent with the modern employment environment").

Courts have found worldwide restrictions on competition to be reasonable when the business at issue is global. *See Scholastic Funding Grp., LLC v. Kimble*, No. 07-557 (JLL), 2007 WL 1231795, at *5 (D.N.J. Apr. 24, 2007) ("[T]he Court does not find the lack of geographic limitation on the Non-Compete Provision unreasonable. Since the telemarketing industry is broad-ranging in its scope by the nature of its business (placing nationwide telephone calls), the geographic scope of the covenant, or [rather the] lack thereof, is likely a reasonable restriction."); *Convergys Corp. v. Wellman*, No. 1:07-CV-509, 2007 WL 4248202, at *7 (S.D. Ohio Nov. 30, 2007) (finding geographic restriction on the "area where the Company is doing business at the time of termination of Employee's employment" to be reasonable "given the nearly global scope of [the employer's] operations" when employer did business in the United States, Canada, the Philippines, India, the United Kingdom, and Europe); *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994) (stating that a noncompete without geographic limitation "can be reasonable if the employer actually has legitimate business interests throughout the world").

Whether the West Virginia Supreme Court agrees with this position on worldwide restrictions is unclear. The West Virginia Supreme Court generally disfavors employee

15

noncompete covenants. *See Weaver*, 478 S.E.2d at 367 ("A restriction imposed upon a person following the termination of a period of employment imposes a restraint upon a person's freedom to work for himself. Public policy . . . frowns upon [this]."); *id.* at 371 ("[C]ontracts which are calculated to rob one of his right to earn his daily bread, or to impoverish him, and cause him or his family to become a charge upon the public charities, or to deprive the public of valuable benefits to accrue from his skill, business or employment, will not be enforced.") (quoting *Boggs*, 87 S.E.2d at 875). The West Virginia Supreme Court instructs that "courts should . . . approach restrictive covenants with grave reservations, and take a strict view of them on first impression." *Reddy*, 298 S.E.2d at 915. It advises to "approach the available authority with respect to time and area limitations with caution." *Id.* at n.7.

However, it is unnecessary for me to decide the validity of a restrictive covenant that is completely geographically unbound. The covenant before me has geographic limits. But, like the courts referred to above, I certainly see that geographical restrictions over a discrete territory lose meaning and *raison d'être* where the reach of the business is in no way restricted by geography. I **FIND** that a 30-mile limitation on a former call center employee is facially unreasonable.

JAK certainly has valid and significant interests at stake, such as the retention of its current employees and its confidential information. However, a geographical restriction does not serve to protect them. These interests are protected by other covenants within the Employment Contract, which covenants Mr. Bayer is enjoined from violating. (Stipulated Order [Docket 16], at 2-3); *see generally Wood v. Acordia of W. Va., Inc.*, 618 S.E.2d 415, 422 (W. Va. 2005) ("[T]his Court holds that whereas a covenant not to compete in an employment agreement between an employer and an employee restricts the employee from engaging in business similar to that of the employer

16

within a designated time and territory after the employment should cease, a non-piracy provision, also known as a non-solicitation or hands-off provision, in an employment agreement, restricts the employee, should the employment cease, from soliciting the employer's customers or making use of the employer's confidential information.").

The West Virginia Supreme Court has made it clear that "a court should hold [a covenant not to compete that is unreasonable on its face] void and unenforceable, and not undertake even a partial enforcement of it." *Huntington Eye Assocs.*, 553 S.E.2d at 780 (quoting Syl. Pt. 2 of *Reddy*). I do so here, and I **FIND** that the covenant to not compete is unenforceable. *See id.*

Thus, I **FIND** that the plaintiffs have not demonstrated a likelihood of success on the merits. Because all four factors of the preliminary injunction standard must be met, my inquiry ends here. *See Real Truth About Obama*, 575 F.3d at 346 (noting that "all four requirements must be satisfied") (citing *Winter*, 555 U.S. at 20).

**V. Conclusion**

For the reasons stated above, the plaintiffs' motion for a preliminary injunction with respect to the noncompete provision is **DENIED**. The court **DIRECTS** the Clerk to refer any remaining discovery matters contained in plaintiffs' motion [Docket 5] to the Magistrate Judge.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:   March 27, 2015

17   _____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE