# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**JAK PRODUCTIONS, INC., and
GROUP CONSULTANTS, INC.,**

  **Plaintiffs,**

**v.**                                    **Civil Action No. 2:15-CV-00361**

**ROBERT BAYER,**

  **Defendant.**

### <u>MEMORANDUM OPINION AND PRETRIAL ORDER</u>

Pending before the Court is Defendant's Motion to Quash or Modify Subpoena (ECF No. 42), Plaintiffs' Response to Defendant's Motion to Quash or Modify Subpoena (ECF No. 44) and Defendant's Reply in Support of Motion to Quash or Modify Subpoena (ECF No. 46).   For the reasons set forth below, the court **DENIES, in part,** Defendant's Motion to Quash or Modify Subpoena (ECF No. 42).

### Background

Plaintiffs, JAK Productions, Inc. (hereinafter JAK) and Group Consultants, Inc. (hereinafter GCI), operate call centers that perform telephone fundraising for non-profit organizations.   JAK and GCI (collectively referred to as Plaintiffs) have call centers in West Virginia, including one in Parkersburg, West Virginia.   Residential Programs, Inc. (hereinafter RPI) is a Delaware corporation who represents itself as a company that "offer[s] diverse skill sets in all aspects of the fundraising process, from Call Center Management and Operations, to Direct Mail, Caging Services and Financial Reporting and full suite Creative Services."   Plaintiffs assert that RPI is a direct competitor to them in the non-profit telemarketing business (ECF No. 1).

1

Defendant entered into an Employment Contract with Plaintiffs on February 24, 2010 (ECF No. 1-1).  Plaintiffs employed Defendant as their Regional Manager from February 2010, to October 19, 2012.  Then, Plaintiffs promoted him to Director of Call Center Operations from October 2012, until March 28, 2014.   RPI employed Defendant from April 2014, to the present as its Operations Manager in Parkersburg, West Virginia.  Defendant performed work from his home for RPI from April 2014, until he started working in RPI's new call center in Athens, Ohio, on October 20, 2014.  Defendant's home is within a thirty-mile radius of JAK's Parkersburg, West Virginia, call center.  RPI's call center in Athens, Ohio, is within a thirty-mile radius of at least one of JAK's Parkersburg, West Virginia, call centers.  While working at RPI's call center in Athens, Ohio, Defendant performs similar operations work as he did at JAK's call center in Parkersburg, West Virginia (ECF No. 45).

Plaintiffs allege that Defendant violated multiple provisions of his employment agreement when he began working for RPI and preparing and managing a new call center for RPI located within a thirty-mile radius of the JAK call center that Defendant previously managed.  Plaintiffs assert, in part, that in connection with Defendant's employment with RPI, Defendant acquired and retained Plaintiffs' confidential and trade secret information, violated the anti-piracy provisions of his employment agreement by soliciting current and former employees of Plaintiffs and violated the restrictive covenants in his employment agreement that prevented him from competing with Plaintiffs within a thirty-mile radius of the call center he managed for Plaintiffs.

**Procedural History**

Plaintiffs filed their complaint on January 8, 2015, bringing actions against Defendant for breach of contract, conversion, misappropriation of trade secrets and breach of the Computer

Fraud and Abuse Act, 18 U.S.C. § 103(g) (ECF No. 1). Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction, Writ of Replevin, Leave to Conduct Expedited Discovery and Production of Documents and Things on January 8, 2015 (ECF No. 5). Plaintiffs filed Motion for Protective Order on January 8, 2015 (ECF No. 7). On January 9, 2015, Plaintiffs filed a Stipulation regarding Motion for a Temporary Restraining Order and Preliminary Injunction, Writ of Replevin, Leave to conduct Expedited Discovery and Production of Documents and Things by Plaintiffs and Defendant (ECF No. 14). District Judge Joseph R. Goodwin held a Motions Hearing on January 26, 2015, to which Plaintiffs' Motion for a Temporary Restraining Order was addressed (ECF No. 19). On February 9, 2015, Plaintiffs filed a Post Preliminary Injunction Hearing Brief (ECF No. 28).

Thereafter, Plaintiffs served a Request for Production of Documents to RPI, a non-party, on February 10, 2015 (ECF No. 32). On March 12, 2015, Defendant filed a Motion to Quash or Modify Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action served by Plaintiffs to RPI (ECF No. 42). Plaintiffs filed a Response in Opposition to Defendant's Motion to Quash or Modify Subpoenas on March 20, 2015 (ECF No. 44). On March 27, 2015, Defendant filed a Reply in Support of Defendant's Motion to Quash or Modify Subpoena (ECF No. 46). Defendant's reply asserted that he timely filed his Motion to Quash or Modify Subpoena, clearly had standing to do so and can provide "the evidence pertinent to this case.... in the ordinary course of discovery." (*Id.*)

Based on the testimony heard at the Motions Hearing and filings by the parties, on March 27, 2015, Judge Goodwin entered Findings of Fact, Conclusions of Law and Memorandum Opinion and Order regarding Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, Writ of Replevin, Leave to Conduct Expedited Discovery and Production

of Documents and Things[1] with respect to the noncompete provision (ECF No. 45).  In order to obtain a preliminary injunction, Plaintiffs must demonstrate the following:  "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor and [4] that an injunction is in the public interest."  *Real Truth About Obama, Inc. v. Fed. Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. National Res. Def. Council Inc.*, 555 U.S. 7, 20 (2008)), *vacated on other grounds*, 559 U.S. 1089 (2010)).  The District Judge denied Plaintiffs' Motion finding that although the Employment Contract is valid, the covenant within the contract to not compete was "unreasonable on its face" (ECF No. 45).  Pursuant to West Virginia law,[2] Judge Goodwin held that the covenant was unreasonable on its face.   The Court found that "the noncompete says nothing about employee recruitment.  It prohibits Mr. Bayer from 'directly or indirectly, engag[ing] in any fund-raising or telemarketing business within a thirty (30)-mile radius.'"  The Court held that Plaintiffs have not demonstrated a likelihood of success on the merits.  The District Court Judge directed the clerk to refer any remaining discovery matters to the undersigned Magistrate Judge.

Plaintiffs filed a Notice of Interlocutary Appeal to the United States Court of Appeals for the Fourth Circuit as to Judge Goodwin's Findings of Fact, Conclusions of Law and Memorandum Opinion and Order from the Motions Hearing (ECF No. 47).  On April 8, 2015, Defendant filed a Motion for Stay Pending Appeal (ECF No. 51).  On April 8, 2015, Judge Goodwin entered a Scheduling Order directing the case to proceed, in part, as follows:

---

[1] On January 8, 2015, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction, Writ of Replevin, Leave to Conduct Expedited Discovery and Production of Documents and Things (ECF No. 5).  Judge Goodwin limited his analysis to the noncompetition section of the Employment Contract between Defendant and Plaintiffs due to the parties stipulating that Defendant is preliminarily enjoined from violating the antipiracy, nonsolicit and confidentiality provisions of his Employment Contract and is required to return all of Plaintiffs' property (ECF No. 16).

[2] The District Judge found that the Employment Contract contained a choice-of-law provision which applied West Virginia law to the analysis (ECF No. 45).

Discovery requests to be completed by August 10, 2015.  Deposition deadline and close of

discovery is on September 24, 2015.  A Jury Trial is set for February 2, 2016 (ECF No. 52).

### Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action

Plaintiffs served a Subpoena to Produce Documents, Information or Objects or to Permit

Inspection of Premises in a Civil Action to RPI on February 10, 2015 (ECF No. 42-1).   The

subpoena required RPI to produce the following requested information by March 12, 2015.

1.  Any and all laptop, tablet or portable computers that Defendant Robert Bayer currently uses, or has used in the past, to perform work for RPI.
2.  Any and all desktop computers that Defendant Robert Bayer currently uses, or has used in the past, to perform work for RPI.
3.  Any and all documents (including e-mails) that reflect, evidence, or relate to any communications between Defendant Robert Bayer and the following individuals:  Barry Birney, James Beaman, Dustin Harkness, Michael Foreman, Steve Naylor, Nigel John, Shane Keller, Bryan Collins, Philip Guido, Marc Wyatt, Jerry Burgess, Darcy Carter, Joe Curry, Jamie Richards, Ellen Keerps, Woody Richards, Jonathan Frye, Darrin Johnson, Jeremy Weaver, James Borrell, Davy Crocket, Kirk Gombos, James Jones, David Evans and Craig Brown.
4.  Any and all documents that reflect, evidence or relation to any JAK or GCI materials, documents and/or recordings in the possession of RPI and/or its agents.

### Defendant's Motion to Quash or Modify Subpoena

Defendant requests that this Court quash or modify the subpoena to produce documents,

information or objects to permit inspection of premises for the following reasons:

1.  The subpoena is overbroad.  Defendant asserts that "The overbroad subpoena probably does encompass some information that is relevant, responsive and could be produced pursuant to an appropriate protective order.  But a protective order has not been entered, and JAK and GCI have made no showing that they cannot obtain the requested information directly from Mr. Bayer, the Defendant in this case, during the ordinary course of discovery."

2. Plaintiffs "seek the production of confidential trade secret information which is of no relevance to this case, which is outside the scope of discovery, and to which [Plaintiffs] are not entitled."

3. Responding to the subpoena would require non-party RPI to produce privileged and confidential trade secret information.

4. Responding to the Plaintiffs' subpoena would impose an undue burden on non-party RPI. (ECF No. 42).

Defendant asserts that "In a case involving allegations of misappropriated confidential trade secrets, Plaintiffs [ ] have served an overbroad subpoena on the Defendant's current employer, non-party Residential Programs, Inc." (ECF No. 42). Defendant asserts that the communications sought in the requests should be directly available from him, instead of RPI. Defendant argues "There is no need to burden RPI, a non-party, with the obligation of rounding up evidence which can be obtained directly from the parties to the case through ordinary discovery processes."  Additionally, Defendant asserts that the subpoena requests production of confidential trade secret information. Defendant argues that RPI and Plaintiffs are "direct competitors."  Defendant avers that many of RPI's employees have worked, at one time or another, for Plaintiffs, and vice versa.

Plaintiffs' Response to Defendant's Motion to Quash or Modify Subpoena states that Defendant's Motion lacks procedural merit because Defendant lacks standing to file the Motion and that he failed to timely file his Motion.  Plaintiffs assert that Defendant's Motion lacks substantive merit because Plaintiffs' subpoena complies with the previous stipulated Orders of the Court and that Plaintiffs narrowly tailored their requests (ECF No. 44).  Plaintiffs request this Court deny Defendant's Motion.

### Discussion

Federal Rules of Civil Procedure, Rule 26(b)(1) permits very broad discovery, encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Young v. State Farm Mut. Auto Ins. Co*., 169 F.R.D. 72, 1996 U.S. Dist. LEXIS 19923 (S.D.W.Va. 1996); *Jackson v. Kroblin Refrigerated Xpress, Inc.*, 49 F.R.D. 134, 1970 U.S. Dist. LEXIS 12851 (N.D.W.Va. 1970).

Discovery should be broad and any relevant materials, including those reasonably calculated to lead to admissible evidence, should be accessible. *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947). The Court should thus consider whether the materials sought are relevant to the plaintiff's cause of action. Discovery is of broader scope than admissibility, and discovery may be had of inadmissible matters. *See Trammel v. United States,* 445 U.S. 40, 48, 100 S. Ct. 906, 911, 63 L. Ed. 2d 186 (1980). The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case. *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D.W. Va. 2000) (citing *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 350, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)).

The Court has previously held that information is relevant, for purposes of discovery, and thus discoverable, if it "bears on, or… reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Although 'the pleadings are the starting point from which relevancy and discovery are determined… [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.' Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes. Therefore, courts broadly construe relevancy in the context of discovery."

*Robinson v. Quicken Loans, Inc., Wells Fargo Bank, N.A. and John Doe Holder*, Case No. 3:12-cv-00981 (Dec. 5, 2012); citing *Kidwiler v. Progressive Paloverde Ins. Co*., 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted).   In disputing the relevancy of discovery, the objecting party has the burden to show why the discovery is improper.  *Hoffman v. United Telecomms., Inc.,* 117 F.R.D. 436, 438 (1987).

Plaintiffs allege that Defendant violated his employment agreement when he began working for RPI.  Plaintiffs allege violations for the following: working at a call center within a thirty-mile radius of Plaintiffs' call center; acquiring Plaintiffs' confidential and trade secret information and then going to work with a competitive call center, RPI; and violating anti-piracy provisions by soliciting former and current employees of Plaintiffs.  As Plaintiffs' subpoena requests communications between Defendant and RPI, as well as, JAK or GCI documents, materials and/or recordings in the custody of RPI and/or its agents, the discovery requests are relevant to the issues identified in Plaintiffs' pleadings and could bear on a party's position.  Therefore, Defendant has failed, at this time, to demonstrate that the discovery is improper or overly broad.

Defendant asserts that Plaintiffs "seek the production of confidential trade secret information" (ECF No. 42).  Defendant asserts that Plaintiffs' subpoena would have RPI, a non-party, "produce volumes of confidential business information which have absolutely nothing to do with this case" (ECF No. 46).  Plaintiffs assert that the subpoena "stands narrowly tailored to the claims at issue in this lawsuit, and it does not require the production of unprotected confidential information nor unduly burden RPI" (ECF No. 44).

Both Federal Civil Procedure Rules 26 and 45 contain provisions protecting confidential commercial information. Rule 26(c)(1)(G) allows the court, for good cause, to issue an order

8

"requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." In order for the court to apply the rule, two criteria must exist. First, the material sought to be protected must be "a trade secret or other confidential research, development, or commercial information." Second, there must be a "good cause" basis for granting the restriction. The party seeking protection bears the burden of establishing both the confidentiality of the material and the harm associated with its disclosure. *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md. 1987) (citing *Cipollone v. Liggett Group, Inc.,* 785 F.2d. 1108, 1121 (3rd Cir. 1986)). Once these elements are demonstrated, the burden shifts to the party seeking disclosure to show that the material is relevant and necessary to its case. *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323, 326 (D.C. Fla. 1985). The court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787 (3rd Cir. 1994) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv.L.Rev. 427, 432–33 (1991).

If the court determines that disclosure is required, the issue becomes whether the materials should be "revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public." *Id*. Factors to consider when deciding if and how to limit disclosure include:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Pansy,* 23 F.3d at 787-91. Although the court exercises broad discretion in deciding "when a protective order is appropriate and what degree of protection is required," *Furlow v. United States,* 55 F.Supp.2d 360, 366 (D.Md. 1999) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)), protective orders "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D.Md. 2006) (quoting *Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

Similarly, Rule 45(d)(3)(B)(i) allows the court to quash or modify a subpoena that requires the disclosure of "a trade secret or other confidential research, development, or commercial information." As an alternative to quashing or modifying the subpoena, the court may order production of the information under specified conditions if the serving party shows "a substantial need" for the information "that cannot be otherwise met without undue hardship" and "ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C). Once again, the moving party has the initial burden of demonstrating the confidential and proprietary nature of the information, and the party's historical efforts to protect it from disclosure. *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 684 (N.D.Cal. 2006); *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 163 F.R.D. 329, 338 (N.D.Cal. 1995). Once that showing is made, the burden shifts to the party serving the subpoena to establish a substantial need for the information that cannot be met without undue hardship. *Id.*

Confidential commercial information, within the meaning of these Rules, is more than routine business data; instead, it is important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when it is released to the public. *Gonzales,* 234 F.R.D. at 684; *see also Diamond State Ins. Co. v. Rebel Oil Co., Inc.,* 157 F.R.D. 691, 697 (D.Nev. 1994) ("Confidential

commercial information" is "information, which disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."). Examples of confidential commercial information entitled to protection under Rules 26(c)(1)(G) and 45(d)(3)(B)(i) include customer lists and revenue information, *Nutratech, Inc., v. Syntech Intern, Inc.,* 242 F.R.D. 552, 555 (N.D.Cal. 2007); product design and development and marketing strategy, *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 305 (D.Ill. 1994); labor costs, *Miles v. Boeing,* 154 F.R.D. 112, 114 (E.D.Pa. 1994); and commercial financial information, *Vollert v. Summa Corp.,* 389 F.Supp 1348, 1352 (D.Hawaii 1975). Moreover, "[p]ricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.,* 224 F.R.D. 53, 57 (D.Conn. 2004) (citing *Vesta Corset Co. v. Carmen Foundations, Inc.,* 1999 WL 13257, at *2 (S.D.N.Y. 1999)).

Plaintiffs assert that materials belonging to them cannot, by definition, stand as confidential trade secrets of RPI (ECF No. 44). Therefore, any of Plaintiffs' materials disclosed to or by RPI are not confidential trade secrets of RPI. Additionally, Plaintiffs assert that in anticipating the possibility that a response may include confidential information, they moved this Court for a protective order on January 8, 2015 (ECF No. 7). On May 7, 2015, this Court considered the protective order filed by Plaintiffs and denied Plaintiffs' motion for protective order. The Court directed the parties to file the Court's form Protective Order endorsed by all counsel of record or submit in writing the reasons why a different protective order should be entered (ECF No. 58). To date, the parties have not complied.

Defendant, in this matter, bears the burden of establishing both the confidentiality of the material and the harm associated with its disclosure, as he is the party asserting the subpoena

request would produce confidential information.  Mere assertions unsupported by specific contentions, evidence or affidavits do not suffice.   At this time, Defendant has failed to demonstrate with any specificity that the discovery sought contains confidential material that will result in harm if disclosed.

Defendant asserts that non-party RPI does not know the individuals comprising the list contained in Request No. 3 and that the requested communications should be directly available from him[3] (ECF No. 42).   Defendant's standing to file a Motion to Quash a Subpoena in response to a subpoena served on a non-party will be discussed below.

Lastly, Defendant asserts that "It is plainly overly burdensome to demand that all of RPI's employees pore over and retrieve any materials concerning the Plaintiffs that they must still have in their possession, especially where the real information that is at issue can all be obtained directly from Mr. Bayer, who is already a party to this case" (ECF No. 46).  Plaintiffs aver that the subpoena does not require RPI to produce all information concerning Plaintiffs.

---

[3] On January 9, 2015, Defendant submitted a joint stipulation to the Court stating that he agreed to make available to Plaintiffs any computer hard drive or other electronic storage device in his custody or control and/or which he used since March 1, 2014 (ECF No. 14).  In the joint stipulation entered by the Court on January 13, 2015, Defendant agreed to the following:

> Subject to an agreement with non-party RPI, Defendant Bayer shall make available to Plaintiffs, or their representatives, for Plaintiffs' forensic imaging, inspection and examination, at a time and place mutually convenient to the Parties in the next fourteen (14) days, any computer hard drive or other electronic storage device in the custody and control of Bayer and/or which has been used by him since March 1, 2014, so that Plaintiffs may ascertain the extent to which Plaintiffs' confidential information is contained on the computer.  Should the parties be unable to reach such an agreement, Plaintiffs reserve the right to seek such relief from the Court on an expedited basis.  (ECF No. 16).

During the Preliminary Injunction Hearing before Judge Goodwin on January 26, 2015, Defendant testified that he has no authority to produce documents contained on RPI's computers and can't speak on RPI's behalf (ECF Nos. 40, 44).  Additionally, Defendant testified that since his employment has ended for Plaintiffs, he has used his personal laptop and computer devices provided by RPI   (ECF No. 40).  When asked if he would be making said computer devices available through discovery, Defendant stated that he would provide his personal computer but that he "[couldn't] speak on behalf of the other ones that were given to [him] by RPI."  (*Id.*)

Plaintiffs assert that by limiting the subpoena request, they limited the production to materials that bear directly on their claim in the present lawsuit regarding the allegations that Defendant acquired Plaintiffs' confidential and trade secret information and/or used those materials to compete with Plaintiffs in violation of his restrictive covenants (ECF No. 44).

In determining whether a request is overly broad or unduly burdensome, the Court will balance the burden on the objecting party against the benefit to the discovering party of having the information. *Hoffman*, 117 at 438. "An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectional." *Allstate Insurance Company v. Gaughan*, 220 W.Va. 113 (2006) cited *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 370 (D.Neb 2004). "Mere recitation of the familiar litany that an interrogatory or a document production request is "overly broad, burdensome, oppressive and irrelevant" will not suffice. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996).

Neither Defendant, nor non-party RPI, have filed evidence or affidavits to support the contention that the subpoena request is unduly burdensome upon RPI. Defendant's mere contention does not suffice. The Court finds that Defendant has failed to demonstrate that the subpoena request is unduly burdensome.

**Timeliness and Standing**

Plaintiffs assert that Defendant waived any standing to object to the Subpoena because his Motion to Quash or Modify Subpoena was untimely filed. Plaintiffs assert that Defendant was notified of their intent to serve the subpoena request on February 3, 2015 (ECF No. 44). Plaintiffs then served RPI the subpoena request on February 10, 2015. Defendant, as a party, received the same service of copy on February 10, 2015. Plaintiffs assert that even if Defendant

13

individually holds standing to object to the subpoena request, under Rule 45(d)(2)(B), Defendant had until February 24, 2015, fourteen days after service, to file his written objection. Plaintiffs argue that by filing his objection on March 12, 2015, Defendant waived any argument he may have had to quash or modify the subpoena.

Plaintiffs served the subpoena request on RPI on February 10, 2015 (ECF No. 44-1). The subpoena requested the production of documents, information or objects or to permit inspection of premises in a civil action by March 12, 2015. Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure requires that a motion to quash be "timely" filed and, although "timely" is not defined in the Rule, courts have held that such a motion should be filed before the subpoena's return date. *Watty v. Sheriff of Clarendon County*, 2012 U.S. Dist. LEXIS 37067 (D.S.C., Jan. 3, 2012); *F.T.C. v. Trudeau*, 2012 WL 5463829, at *3 (N.D. Ohio, Nov. 8, 2012) (citing *Estate of Ungar v. Palestinian Authority*, 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006)0. Defendant's Motion to Quash or Modify Subpoena was timely filed.[4]

Plaintiffs assert in their Response to Defendant's Motion to Quash or Modify Subpoena that Defendant lacks standing to file the Motion to Quash or Modify Subpoena (ECF No. 44). Plaintiffs assert that "The Request and Subpoena require only RPI, not Bayer individually, to produce the requested documents and things." (*Id.*) Plaintiffs assert that Defendant's position that he, individually, can respond to the subpoena served on RPI as an employee and agent of RPI is contrary to his testimony at the preliminary injunction hearing. At the preliminary injunction hearing, Defendant testified that he would cooperate in producing all information from his personal laptop, but he lacked the authority to produce the computers that were given to

---

[4]Defendant's assertion that Federal Civil Procedure Rule 26(d) prohibits parties from conducting discovery until they have conferred as required by Rule 26(f) is moot per the Report of Parties' Planning Meeting filed on April 7, 2015 (ECF No. 50) and the District Judge's Scheduling Order filed on April 8, 2015 (ECF No. 52).

him by RPI (ECF No. 23).    Plaintiffs aver that Defendant cannot testify that he does not have

authority for RPI at the preliminary injunction hearing then turn around and file a Motion to

Quash or Modify Subpoena asserting that as upper level management for RPI, he is subject to

Plaintiffs' subpoena request to RPI (ECF Nos. 44-1, 46).

A motion to quash or modify a subpoena is governed by Federal Rule of Civil Procedure

45(d). Specifically, Rule 45(d)(3) outlines when a court *must* quash or modify a subpoena, when

it *may* do so, and when the court may direct compliance under specified conditions. Ordinarily

"only the party or person to whom the subpoena is directed has standing to move to quash or

otherwise object to a subpoena." *Transcor, Inc. v. Furney Charters, Inc.,* 212 F.R.D. 588, 590

(D.Kan. 2003) (citation omitted). However, an exception exists when the person objecting to the

subpoena has a personal right or privilege in the information sought by the requester. *United

States v. Idema,* 118 Fed. App'x 740, 744 (4th Cir. 2005); *see also Singletary v. Sterling

Transport Company, Inc.,* 289 F.R.D. 237, 239 (E.D.Va. 2012).

When a subpoena is issued under Rule 45 for the purpose of discovery, "Rule 45 adopts

the standard[s] codified in Rule 26." *Schaaf v. SmithKline Beecham Corp*., 233 F.R.D. 451, 453

(E.D.N.C. 2005). In other words, a subpoena used for discovery must comply with the scope and

limits of discovery set forth in Rule 26, and may be quashed or modified for the same reasons

that would support a protective order under Rule 26. *HDSherer LLC v. Natural Molecular

Testing Corp,* 292 F.R.D. 305, 308 (D.S.C. 2013). In this context, a subpoena may be used to

discover "any nonprivileged matter that is relevant to any party's claim or defense ... if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.

Civ. P. 26(b). "The scope of relevancy under the discovery rules is broad, such that relevancy

encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr*

*v. Double T Diner,* 272 F.R.D. 431, 433 (D.Md.). For purposes of discovery, information is relevant, and thus discoverable, if it '"bears on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Although 'the pleadings are the starting point from which relevancy and discovery are determined ... [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.' Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes." *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted).

Simply because information is discoverable under Rule 26, however, "does not mean that discovery must be had." *Schaaf,* 233 F.R.D. at 453 (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004)). Discovery that seeks relevant information may nevertheless be restricted or prohibited pursuant to a Rule 26(c) motion when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Moreover, with or without a motion*,* the court may limit the frequency and extent of discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The protections conferred by Rule 26 are incorporated in Rule 45(d)(3), which sets forth additional grounds for quashing, modifying, or molding the terms of a subpoena. *HDSherer LLC,* 292 F.R.D. at 308 ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (citing *Cook v. Howard,* 484 Fed.Appx. 805, 812 (4th Cir. Aug. 24, 2012) ("Although Rule 45[d] sets

forth additional grounds on which a subpoena against a third party may be quashed[,] ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.")); *see also Firetrace USA, LLC v. Jesclard,* No. cv–07–2001, 2008 WL 5146691, at *2 (D.Ariz. Dec. 8, 2008) ("According to its 1991 Advisory Committee Notes, Rule 45 [(d)](3) 'tracks the provisions of Rule 26(c).' Fed. R. Civ. P. 45. In this way, Rules 45 and 26 are not mutually exclusive, but rather cover the same ground.")

Regardless of whether a motion is made under Rule 26(c) or Rule 45(d), the party opposing discovery has the obligation to submit evidence supporting its claims that the discovery is unduly burdensome, oppressive, or irrelevant. To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D.Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D. Fla.2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome").

The undersigned will now address Plaintiffs' contention that Defendant lacks standing to move to quash or modify the subpoena.  Although the subpoena is directed to RPI, Defendant

asserts that "Responding to the Plaintiffs' subpoena would impose an undue burden on non-party RPI and would require the production of privileged and confidential trade secret information to which the Plaintiffs are not, in any event entitled" (ECF No. 42). Defendant continues to assert that "this case is fundamentally about Mr. Bayer's conduct, not the conduct of RPI and all of its agents or employees." (*Id.*)

The Reply in Support of Defendant's Motion to Quash or Modify Subpoena asserts that Plaintiffs' Request No. 3 for all documents pertaining to communications between Defendant and his co-workers or subordinates, does not contain any limitations based on recruiting, retention or anything remotely related to this case (ECF No. 46). Defendant asserts that Requests Nos. 1, 2 and 4 are overly broad in that they seek entire computers which may contain emails or files germane to this Plaintiffs' claims in this matter. Additionally, Defendant asserts that the requests are overly broad in that Plaintiffs seek the production of "any and all documents that reflect, evidence or relate to any of Plaintiffs' materials in the possession of RPI and/or its agents."

Plaintiffs assert that Requests Nos. 1 and 2 (seeking any and all desktop computers Defendant currently or has used in the past to perform work for RPI) are not overly broad or outside the scope of the lawsuit because the lawsuit involves claims that Defendant violated his restrictive covenants by working for RPI (ECF No. 44). Plaintiffs assert that the e-mails or files contained in the requested computers showing when, how, where and with whom Defendant competed against Plaintiffs, directly bear on the merits of their claims. (*Id.*) Plaintiffs assert that to the extent Request No. 3 may include confidential information, Plaintiffs "accounted for that possibility in moving the Court for a protective order." (*Id.*) Plaintiffs argue that "Contrary to Bayer's contention that the Requests make no exception for protective information, Plaintiffs

18

previously filed a Motion for Protective Order and proposed Order for precisely this purpose." Plaintiffs assert that Defendant's communication with current or former employees of Plaintiffs directly relates to whether he violated the anti-solicitation or restrictive covenants in his employment agreement and Plaintiffs stand entitled to discover communications.  Lastly, Plaintiffs assert that Request No. 4 does not seek any confidential information. Plaintiffs aver that RPI did not develop any JAK or GCI materials it may have in its possession and entities outside RPI's business would have knowledge of those materials, so they could not constitute trade secrets of RPI. (*Id.*)

Fed.R.Civ.P. 45(c)(3) provides as follows:

(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to show reasonable time for compliance;

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions or clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)   requires disclosure of a trade secret, or other confidential research, development, or commercial information; or

(ii)  requires disclosure of an unrestrained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of the party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court

may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the the [sic] person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

A party generally has no standing to file a motion to quash a subpoena issued to a third party based upon Rule 45(c). *Joiner v. Choicepoint Servs., Inc.*, No. 1:05cv321, 2006 U.S. Dist. LEXIS 70239, 2006 WL 2669370, at *4 (W.D.N.C. Sept. 15, 2006) (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought… Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena *duces tecum*.") The Fourth Circuit has held that a party lacks standing to move to quash a subpoena issued to a nonparty when the party seeking to challenge the subpoena fails to show a personal right or privilege in the information sought by the subpoena. U*.S. Idema, No. 04-6130*, 118 Fed.Appx. 740, 2005 WL 17436, at *3 (C.A. 4 (N.C.) Jan. 4, 2005) (citing *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999)). Defendant has not demonstrated that he has a personal right to, or privilege in, the information sought in the subpoenas. Therefore, Defendant lacks standing to file a motion to quash the subpoena issued to RPI. The Court hereby **DENIES, in part,** Defendant's Motion to Quash or Modify Subpoena (ECF No. 42).

Plaintiffs Motion for Protective Order was denied on May 7, 2015, and the parties were directed to file with the Court the Agreed Protective Order form (endorsed by all counsel of record) that can be found on the Court's website or submit in writing the reasons why the Protective Order attached to Plaintiffs' Motion should be granted (ECF No. 58). To date the

parties have not filed the Agreed Protective Order form or submitted reasons why the Protective Order attached to Plaintiffs' Motion should be granted.  Therefore, currently no protective order has been filed to protect the confidential, proprietary and otherwise protected material which RPI's discovery response could produce.

Pursuant to Federal Civil Procedure Rule 45(d), the court may, on motion, quash or modify the subpoena.  Therefore, to potentially protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, Plaintiffs are **ORDERED** to **MODIFY** the Subpoena to tailor the "any and all" language in the requests directed to RPI to limit production of documents and/or to the allegations contained in Plaintiffs' Verified Complaint for Injunctive Relief and Damages (ECF No. 1).  Additionally, the parties are **ORDERED** to **FILE** the Agreed Protective Order form or submitted reasons why the Protective Order attached to Plaintiffs' Motion should be granted.

Plaintiffs are **DIRECTED** to modify the subpoena for discovery requests within fourteen (14) days of the filing of this Order.  The Parties **SHALL FILE** the Agreed Protective Order form or submit reasons why the Protective Order attached to Plaintiffs' Motion should be granted within seven (7) days of the filing of this Order.

The Clerk is instructed to provide a copy of this Order to counsel of record.

ENTERED:  May 22, 2015.

Dwane L. Tinsley
United States Magistrate Judge